## In re Lucien Longchamps, Respondent.

No. 57.   Argued November 5, 1945.—Decided December 10, 1945.

*Lucien Longchamps, in pro. per.,* and *Celestino Iriarte,* and *H. González Blanes* for respondent.  *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for The People.

Mr. Justice de Jesús delivered the opinion of the court.

This is a disbarment proceeding against Lucien Longchamps, who was admitted to the bar on March 9, 1926, and as notary on May 16 of the following year.   The facts proven may be summarized thus:  About the year 1942 Juan Nazario Rodríguez filed a complaint against Delfín Rodríguez for a violation of § 371 of the Penal Code, consisting in that he, on the ground that he was the owner of the house, entered into the residence of the complainant and Eloína Vélez, against their express will and without their consent, disturbing said domicile, closing its door and windows, performing acts of ownership therein, and forbidding the dwellers of the house to enter therein.

Subsequent to the filing of the complaint the respondent, at the behest of the complainant, procured from the Attorney

General his appointment as private prosecutting attorney to act in the aforesaid criminal action.

Upon defendant Delfín Rodríguez being informed that the respondent was going to act as prosecuting attorney in the case, he conferred with him in order to settle the case and persuade the complainant to desist from the complaint. With the consent of the complainant, it was agreed that in consideration of the amount of $60.00, which the defendant bound himself to pay to the complainant, the latter would file a motion for compromise of the offense and dismissal of the complaint. To that end the respondent prepared a motion in the name of the complainant stating that he had received compensation for the damages caused him by the defendant and paying for the dismissal of the complaint, upon paying the costs. Upon the filing of that motion in the Municipal Court of Yauco, where the case was pending, the judge of said court told the respondent that he would deny the motion, inasmuch as in his opinion the case could not be settled pursuant to § 446 of the Code of Criminal Procedure. Having learned the opinion of the municipal judge as to this particular, on July 15, 1942, the respondent drew up a stipulation, signed by the defendant and the complainant before the respondent as notary, which, in its pertinent part, reads thus:

"The complainant herein, Juan Nazario Rodríguez, and defendant Delfín Rodríguez have agreed as follows:

"Being of the opinion that this offense may be compromised under Section 446 of the Penal Code (*sic*), they stipulate that upon payment by defendant to the prosecuting witness of the sum of SIXTY DOLLARS, plus costs, if any, the latter shall be regarded as duly compensated for the damages sustained by him, it being understood that the defendant denies criminal responsibility for the act

"The complainant binds himself to appear in court on July 22, 1942, and *to testify in such a manner that the defendant may be acquitted,* after which Don Delfín Rodríguez shall pay to Don Juan Nazario Rodríguez the stipulated sum of sixty dollars." (Italics ours.)

On that same day, the respondent drafted two affidavits, one to be sworn by Juan Nazario Rodríguez, the complainant, and the other by his concubine Eloína Vélez Ramos, which read as follows:

### "Affidavit of Juan Nazario Rodríguez

"Now comes Juan Nazario Rodríguez, of age, married, laborer, and resident of Guánica, Puerto Rico, and appearing before this court in Yauco, on July 15, 1942, after being duly sworn states:

"That he appears as complainant in the case of *People of Puerto Rico* v. *Delfín Rodríguez* on a violation of Section 371 of the Penal Code; that he appears as complainant although he has no personal knowledge of the facts alleged in the complaint, inasmuch as the complainant was in Ensenada and did not witness the facts alleged in the complaint; that the defendant, Don Delfín Rodríguez, without admitting any criminal responsibility for the acts alleged therein, has paid compensation to the complainant for the damages allegedly sustained by the latter; and that the aforesaid is the truth, the whole truth, and nothing but the thruth."

### "Affidavit of Eloína Vélez Ramos

"Now comes Eloína Vélez Ramos, resident of Barrio Susúa Baja, of Guánica, on July 15, 1942, at Yauco, and upon being duly sworn states:

"That she appears as one of the witnesses for the prosecution in the case of *People of Puerto Rico* v. *Delfín Rodríguez,* for a violation of Section 371 of the Penal Code; that she was not present at the place of the occurrence charged in the complaint and has no personal knowledge of the case; that upon returning to her home after having helped her husband, Juan Nazario Rodríguez, in his everyday duties, she found the house closed, whereupon she went to the Justice of the Peace of Guánica and to the Insular Police in in order that they should open the house where she lived with her husband and that finally Don Delfín Rodríguez consented to have the house opened; that her husband Juan Nazario Rodríguez was not present when the house was closed; that he was in Ensenada. That the aforesaid is the truth, the whole truth, and nothing but the truth."

After having sworn to the above-copied statements before the respondent himself, complainant demanded payment of

the $60.00, but upon the respondent informing him that he could not collect said amount until after the trial of the case and the acquittal of the defendant, the complainant objected and procured from the Attorney General the setting aside of the appointment of special prosecuting attorney which had been made in favor of the respondent.[1]

According to the testimony of Juan Nazario Rodríguez, the latter told the respondent that on the day of the occurrence alleged in the complaint the complainant was working in a farm of defendant's father and that defendant came to him and told him that he had to leave the house by 7 p. m.; that the complainant went to town to see defendant's father and that when he returned at six o'clock he found the house closed, and that defendant forbade him to enter the house. Eloína Vélez, in turn, testified that on that same day defendant told her that she and her husband had to move from the house or that he would shoot them but that she admonished him not to do such a thing, the defendant insisting that they had to leave before seven o'clck and if they refused he would set the house on fire or throw their things outside the house, and that she went to help her husband when the latter went to see defendant's father, returning later with the complainant; that finally they were allowed to enter the house at two o'clock in the morning by an order of the Justice of the Peace.

We have no doubt whatsoever that both the complainant and his concubine have told the truth as to what they informed the respondent when the latter took charge of the case as private prosecuting attorney in the municipal court. Indeed, if their statements to the respondent had been exactly the same as the latter reproduced them later, undoubtedly the respondent would not have asked the Attorney General to appoint him private prosecuting attorney in a case where

[1] The defendant was convicted at the trial in the Municipal Court of Yauco, and at a trial *de novo* in the District Court of Ponce, this judgment being finally affirmed by this court. *People v. Rodríguez*, 62 P.R.R. 306.

there was a total lack of evidence. Upon drawing up the two sworn statements, the respondent knew, as disclosed by the evidence, that both statements were false.

Likewise, the respondent, as attorney, was bound by the Canons of Professional Ethics to abstain from drawing up and signing as notary a stipulation like the one copied in this opinion, where the complainant was virtually binding himself to deceive the court by changing his testimony so as to obtain defendant's acquittal.

Respondent's acts, apart from the fact that they could be classed as subordination of perjury, are in violation of that part of the oath which he took upon being admitted to the bar, to wit:

"I will employ for the purpose of maintaining the causes confided in me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law."

He also violated Canon 32 of Professional Ethics which forbids any lawyer to render service or advice involving disloyalty to the law or disrespect of the Judicial Office.

For the aforesaid reasons, the petition is granted and the respondent is suspended from practice as attorney and notary for a period of two years, counted from this date.

